UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

HENRY LAVERNE PATTERSON,

      Plaintiff,

v.

LORETTA RYKS, WARNER MICHAEL,
KELLEY MICHAEL, TOLEFREE RAZHAN,
GREG LINDELL, STEVE HAMMER, JOHN
KING, JOAN FABIAN, and
TERRY CARLSON,

      Defendants.

Civil No. 10-4758 (DWF/LIB)

**REPORT AND RECOMMENDATION**

Plaintiff, a Minnesota state prison inmate, commenced this action by filing a pleading entitled "Complaint for Violation of Civil Rights Under 42 U.S.C. 1983." (Docket No. 1.) Plaintiff did not pay the $350 filing fee required for this action, (see 28 U.S.C. § 1914(a)), but instead he applied for leave to proceed in forma pauperis, ("IFP"). (Docket No. 2.) By order dated December 2, 2010, (Docket No. 3), Plaintiff was advised that his IFP application would not be addressed, and his case would not go forward, until after he paid an initial partial filing fee of $28.54, as required by 28 U.S.C. § 1915(b)(1).

Plaintiff has paid his initial partial filing fee, (Docket No. 4), so his complaint is now ripe for initial screening pursuant to 28 U.S.C. § 1915A.[1] The matter has been referred to

---

[1] Plaintiff's initial partial filing fee was accompanied by a letter which seemed to suggest that he wanted to add some additional claims to his original pleading. Therefore, Plaintiff was granted leave to file an amended complaint. (See Order dated February 2, 2011, [Docket No. 6].) The order granting leave to amend expressly informed Plaintiff that if he did not file an amended complaint by March 4, 2011, he would be deemed to have waived his right to amend his pleading, and the Court would then review his original complaint pursuant to § 1915A. The deadline for amending has now passed, and Plaintiff has not filed an amended complaint. Therefore, Plaintiff has waived the opportunity to add any new claims to his pleading, and his original complaint, (Docket No. 1), remains the

this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, the Court finds that Plaintiff's complaint fails to state a cause of action on which relief can be granted. The Court will therefore recommend that this action be summarily dismissed pursuant to 28 U.S.C. § 1915A(b).

**I. BACKGROUND**

Plaintiff is an inmate at the Minnesota Correctional Facility in Stillwater, Minnesota, ("MCF-Stillwater"). He alleges that on September 1, 2010, four correctional officers at MCF-Stillwater claimed they saw a videotape which showed another inmate handing Plaintiff something called "hootch starter." (Complaint, p. 4, § IV, ["Statement of Claim"], ¶ 1.) The Court assumes that "hootch starter" is used to concoct home-made intoxicants, and it presumably is treated as contraband in prison.

The four correctional officers who allegedly saw Plaintiff receive the hootch starter on the videotape are Defendants Warner Michael, Kelley Michael, Ryks Loretta, and Tolefree Razhan.[2] Based on what these four Defendants purportedly observed on the videotape, Plaintiff was accused of violating prison regulations. However, Plaintiff contends that he did not know anything about those accusations until he appeared at a hearing before another correctional officer, Defendant Greg Lindell, which involved a wholly unrelated matter. (Id., ¶ 2.) At that hearing, Plaintiff was found guilty on the hootch starter accusation, even though he allegedly had received no prior notice about the accusation,

---

operative pleading in this case. That original complaint is now subject to initial screening under § 1915A.

[2] The Court suspects that the first and last names of these Defendants may be inverted, but the names have been repeated here as they appear in Plaintiff's complaint.

and he allegedly knew nothing about the matter. (Id.)

Disciplinary sanctions were imposed against Plaintiff because he was found guilty on the hootch starter accusation. He was placed in segregated confinement, and he lost his prison job. Plaintiff has submitted several exhibits with his complaint, which indicate that he was placed in segregated confinement for 30 days. It is not clear whether Plaintiff permanently lost his prison job, but for present purposes, the Court will assume that is the case.

After Plaintiff was found guilty and disciplined, he filed an appeal that was reviewed by Defendant Steve Hammer, an assistant warden at MCF-Stillwater. (Id., ¶ 3.) Defendant Hammer allegedly denied Plaintiff's appeal, (id.), and Plaintiff then presented a further appeal to Defendant Joan Fabian, who was then the Minnesota Commissioner of Corrections. (Id., ¶ 4.) Defendant Fabian allegedly referred Plaintiff's appeal back to MCF-Stillwater, and the appeal was then allegedly reviewed by Defendant John King, the Warden at MCF-Stillwater. (Id., ¶s 4-5.) Plaintiff alleges that Defendant King declined to review the videotape that gave rise to the hootch starter accusation and subsequent disciplinary sanctions. (Id., ¶ 5.) Defendant King allegedly refused to take any further action on the matter. (Id.)

Plaintiff is now attempting to sue the various named Defendants in this action for allegedly violating his federal constitutional rights. He claims that his constitutional rights were violated, because (1) he was not notified about the hootch starter accusation, and he was not aware of that accusation, and (2) he was disciplined based on a false report about the accusation. (Id., ¶ 6.)

Plaintiff describes the relief he is seeking in this case as follows:

> "Job reinstated and back wages, also disciplinary action to all staff whose name was on false report and other appeal officers who refused to look at video which would of showed I never had or accepted contraband."

(Complaint, p. 4, § V, ["Relief"].)

## II. DISCUSSION

Because Plaintiff is a prisoner who is seeking redress from government employees, his pleading is subject to preliminary "screening" pursuant to 28 U.S.C. § 1915A. That statute, which is part of the Prison Litigation Reform Act of 1995, ("the PLRA"), requires federal courts to screen the pleadings in every civil action brought by a prisoner against governmental entities and/or employees "before docketing, if feasible or, in any event, as soon as practicable after docketing." 28 U.S.C. § 1915A(a). The Court must determine which aspects of the pleading are actionable and should be allowed to proceed. If the pleading fails to state a legally cognizable claim, the action must be dismissed. 28 U.S.C. § 1915A(b)(1).

To state an actionable claim for relief, a plaintiff must allege a set of specific historical facts, which, if proven true, would entitle the plaintiff to some redress against the named defendant(s) under some cognizable legal theory. See Martin v. Aubuchon, 623 F.2d 1282, 1286 (8th Cir. 1980) (although federal courts must "view pro se pleadings liberally, such pleadings may not be merely conclusory: the complaint must allege facts, which if true, state a claim as a matter of law"). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009). A complaint fails to state a cause of action if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp.

4

v. Twombly, 550 U.S. 544, 570 (2007). The facts supporting a plaintiff's claims must be clearly alleged. Federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint." Stone v. Harry, 364 F.3d 912, 915 (8th Cir. 2004).

In this case, Plaintiff is attempting to sue the named Defendants under 42 U.S.C. § 1983 for allegedly violating his federal constitutional rights. Plaintiff contends that his constitutional rights were violated because he was not given sufficient notice of the disciplinary charges brought against him, and because he was found guilty of those charges based on a false report. Thus, Plaintiff evidently believes that Defendants violated his constitutional rights by causing him to be disciplined, (or allowing him to be disciplined), without affording him the procedural benefits of due process.

To state an actionable § 1983 due process claim, a complainant must allege a set of facts showing that he was deprived of a constitutionally protected interest in life, liberty or property, without being afforded adequate procedural protections. Ragan v. Lynch, 113 F.3d 875, 876 (8th Cir. 1997) ("[a] due process claim is cognizable only if there is a recognized liberty or property interest at stake"); Orr v. Larkins, 610 F.3d 1032, 1034 (8th Cir. 2010) (per curiam) ("'[i]n order to prevail on a Fourteenth Amendment due process claim, [the plaintiff] must first demonstrate that he was deprived of life, liberty, or property by government action'") (quoting Phillips v. Norris, 320 F.3d 844, 846 (8th Cir.2003)). Plaintiff obviously believes he has a constitutionally protected liberty interest in (1) remaining in the general prison population, (as opposed to segregated confinement), and (2) retaining his prison job. He also believes that he could not be deprived of those interests without being provided due process.

However, in prisoner civil rights cases, a constitutionally protected liberty interest will be found, and the protections of due process will therefore come into play, only when the prisoner has shown the type of unusual hardship, or dramatic departure from ordinary prison life, that is contemplated in Sandin v. Conner, 515 U.S. 472 (1995). In Sandin, the Supreme Court held that a prisoner has not been deprived of constitutionally protected liberty interest warranting due process protection, unless he has suffered an "atypical and significant hardship... in relation to the ordinary incidents of prison life." Id. at 484. See also Orr, 610 F.3d at 1034 ("[t]o show he was deprived of a protected liberty interest, [a prisoner] must identify conditions that impose 'atypical or significant hardship ... in relation to the ordinary incidents of prison life'") (quoting Sandin, 515 U.S. at 484). In Moorman v. Thalacker, 83 F.3d 970, 972 (8th Cir. 1996), the Court of Appeals interpreted Sandin to mean that prisoner due process rights are implicated only when there have been "deprivations which work such major disruptions in a prisoner's environment and life that they present dramatic departures from the basic conditions and ordinary incidents of prison sentences." (Emphasis added.)

In this case, Plaintiff has not pleaded an actionable due process claim, because he has not alleged any facts showing the kind of atypical prison conditions that Sandin requires. It is well settled that, for due process purposes, assignment to segregated confinement is considered to be a normal part of prison life. Therefore, limited periods of segregated confinement are not considered to be an "atypical and significant hardship" that can give rise to a protected liberty interest. The Eighth Circuit has repeatedly held that "a demotion to segregation, even without cause, is not itself an atypical and significant hardship'" that implicates a protected liberty interest. Orr, 610 F.3d at 1034, quoting

6

Phillips, 320 F.3d at 847 (emphasis added). See also Portley-el v. Brill, 288 F.3d 1063, 1065 (8th Cir. 2002) ("[w]e have consistently held that administrative and disciplinary segregation are not atypical and significant hardships under Sandin"). Because Plaintiff did not suffer an atypical and significant hardship when he was placed in segregated confinement, he was not deprived of a protected liberty interest, and he was not entitled to the procedural benefits of due process. Therefore, Plaintiff has not pleaded an actionable due process claim based on his segregated confinement.

It is also well settled that prisoners do not have a constitutionally protected liberty interest in having a prison job. Prisoners are frequently denied employment opportunities for many different reasons, and such deprivations are not considered to be an "atypical and significant hardship" or a "dramatic departure" from the ordinary conditions of a prison sentence. Callender v. Sioux City Residential Treatment Facility, 88 F.3d 666, 669-70 (8th Cir. 1996); Freitas v. Ault, 109 F.3d 1335, 1338 (8th Cir. 1997); Dominque v. Weld, 73 F.3d 1156, 1161 (1st Cir. 1996); Bulger v. United States Bureau of Prisons, 65 F.3d 48, 50 (5th Cir. 1995). See also Burton v. Evans, No. 01 C 3328 (N.D.Ill. May 2, 2002) 2002 WL 832590 at *5 ("[a] prisoner's interest in having a job is not protected as a liberty interest by the Due Process Clause"). Thus, Plaintiff did not have a protected liberty interest in retaining his prison job, which means that he was not entitled to due process before being deprived of his job.

In sum, it is well settled that segregated confinement and the loss of a prison job are not considered to be atypical and significant hardships for prisoners. Therefore, according to Sandin, Plaintiff was not deprived of a constitutionally protected liberty interest when he was placed in segregated confinement and lost his prison job. Because Plaintiff was not

deprived of any constitutionally protected liberty interest, he was not entitled to due process. Thus, the facts alleged in Plaintiff's complaint do not state an actionable due process claim.

## III. CONCLUSION

For the reasons discussed above, the Court concludes that Plaintiff has failed to plead a cause of action on which relief can be granted. The Court will therefore recommend that this case be summarily dismissed pursuant to 28 U.S.C. § 1915A(b). Because Plaintiff has not pleaded a viable claim in his complaint, his application for leave to proceed IFP must be denied. See 28 U.S.C. § 1915(e)(2)(B)(ii). Notwithstanding the dismissal of this action, Plaintiff shall remain liable for the unpaid balance of the $350 filing fee.[3] To date, Plaintiff has paid only $28.54, so he still owes $321.46. Prison officials will have to deduct that amount from his prison trust account and pay it to the Clerk of Court in the manner prescribed by 28 U.S.C. § 1915(b)(2). Lastly, because Plaintiff has failed to plead an actionable claim for relief, the Court will recommend that the dismissal of this action be counted as a "strike" against Plaintiff for purposes of 28 U.S.C. § 1915(g).

---

[3] Under the PLRA, prisoners may be excused from pre-paying the full amount of the applicable filing fee before filing an action. However, 28 U.S.C. § 1915(b) clearly states that prisoners "shall be required to pay the full amount of the filing fee." In other words, prisoners are permitted to file actions without paying the full filing fee in advance, but they still remain liable for the fee. Ashley v. Dilworth, 147 F.3d 715, 716 (8th Cir. 1998) ("[t]he purpose of the [PLRA] was to require all prisoner-litigants to pay filing fees in full, with the only issue being whether the inmate pays the entire filing fee at the initiation of the proceeding or in installments over a period of time"). Nothing in the PLRA suggests that the dismissal of a prisoner's action would extinguish the ultimate obligation to pay the filing fee. See In re Tyler, 110 F.3d 528, 529-30 (8th Cir. 1997) ("the PLRA makes prisoners responsible for their filing fees the moment the prisoner brings a civil action or files an appeal").

**IV.  RECOMMENDATION**

Based upon the above, and upon all the files, records, and proceedings herein,

**IT IS RECOMMENDED** that:

1.  Plaintiff's application for leave to proceed <u>in forma pauperis</u>, (Docket No. 2), be **DENIED**;

2.  This action be summarily **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1);

3.  Plaintiff be required to pay the unpaid balance of the Court filing fee, namely the sum of $321.46, in accordance with 28 U.S.C. § 1915(b)(2); and

4. The dismissal of this action be counted as a "strike" against Plaintiff for purposes of 28 U.S.C. § 1915(g).

Dated: March 28, 2011

s/Leo I. Brisbois
LEO I. BRISBOIS
United States Magistrate Judge

**N O T I C E**

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by April 11, 2011** a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof.  Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.